IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30359 |
| | § | |
| MICHELLE LEE MEARS | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | JUDGE EDUARDO V. RODRIGUEZ |

| | | |
|---|---|---|
| VIRAGE SPV 1 LLC | § | |
| *Plaintiff,* | § | |
| v. | § | |
| MICHELLE LEE MEARS | § | |
| *Defendant.* | § | ADV. PRO. NO. _____ |

**VIRAGE'S COMPLAINT FOR A DETERMINATION
EXCEPTING DEBT FROM DISCHARGE**

### I.    PRELIMINARY STATEMENT

1. This is an adversary proceeding by Creditor Virage SPV 1 LLC ("Virage" or "Plaintiff"), for a determination excepting a debt under section 523(a)(6), owed by Debtor, Michelle Lee Mears ("Defendant," "Debtor," or "Mears"), from discharge under section 523(c)(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4007.

### II.    JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

3.  Venue is proper in this district under 28 U.S.C. § 1409(a). This adversary proceeding is related to a bankruptcy case under Chapter 7 that is pending in this district (Case No. 25-30359).

4.  This adversary proceeding is commenced pursuant to section 523(c) of the Bankruptcy Code and Bankruptcy Rules 4007 and 7001(6).

### III.  PARTIES

5.  Virage is the holder of a claim against Defendant. Virage is a litigation funding company with its principal place of business in Harris County, Texas.

6.  Defendant is the Chapter 7 debtor in the above-captioned case. Her address is 2222 Del Monte Dr., Houston, TX 77019.

### IV.  FACTUAL BACKGROUND

**A. Mears agreed to and guaranteed the Loan with Virage.**

7.  On August 11, 2017, Virage entered into Loan VL 1083 (the "Loan") with Mears, her partner Truett Akin ("Akin"), and Mears's law firm Akin Mears LLP ("Borrowers").

8.  In the Loan, Virage agreed to "redocument and consolidate" Borrowers' prior loans with Virage, which included $56,302,967.63 in principal and $21,013,622.17 in interest. Borrowers agreed: (a) to pay 60% of "Case Proceeds" of "Eligible Cases" for eleven dockets listed in Schedule 1.1 of the Loan; (b) to pay principal and interest; and (c) to grant Virage a security interest in "Case Proceeds" of "Eligible Cases." Ex. 1 §§ 9.1, 2.4(b), 2.3, 10.1.

9.  "Eligible Case" means "each **case or claim** listed on Schedule 1.1 and, subject to Section 6.2, Schedule 1.1(b)." Ex. 1 at 7 (emphasis added). "'*Eligible Cases*' means all of such cases and claims." *Id.* "Schedule 1.1," in turn, "list[s]" the "Eligible Cases" as these eleven **dockets**:



Ex. 1 at p. 42 (emphasis added).

10. "Eligible Cases" specifically includes **unlisted clients**, as Virage's security interest covers "Case Proceeds of all Eligible Cases, whether **now owned or hereafter acquired**." Ex. 1 § 10.1 (emphasis added). Thus, any "case" or "claim" within these eleven dockets is an "Eligible Case" even if Borrowers did not provide the client's name to Virage.

11. Mears also personally guaranteed repayment of the Loan. Ex. 1 at § 9.1. As of September 30, 2024, the Loan balance was $137,357,893.06.

**B. Mears converted Virage's collateral and defaulted on the Loan.**

12. Borrowers defaulted on the Loan, including by withholding and converting several million dollars' worth of Case Proceeds owed to Virage. Ex. 1 §§ 2.4(b), 8.1(a).

13. For example, beginning in November 2018, Borrowers recovered $7,359,493.52 of Depakote Case Proceeds. Ex. 2, Akin Dep. Tr. at 74:2-76:1. Borrowers did not pay Virage 60%. *Id.* at 76:2-4 ("AkinMears did not pay 60 percent of $7,359,493.52" for Depakote), 92:2-4 ("AkinMears received $7.4 million on these Depakote cases"). Instead, Borrowers only reported to and paid Virage on a subset of Depakote Eligible Cases and split the remaining proceeds, with 70% going to Akin ("TBA") and 30% to Mears ("MLM"):

3



Ex. 3 at 3.

14.     This failure to report and pay on the Depakote Case Proceeds was a default under the Loan and, among other defaults, triggered provisions obligating Borrowers to pay 100% of those Depakote Case Proceeds to Virage. Ex. 1 §§ 2.4(b), 7.3, 8.1(a).

15.     Borrowers then transferred these Case Proceeds to Akin's and Mears's personal bank accounts.  Ex. 3 at 3; Ex. 4, Mears Bank Account Statement at 1-2.

16.     Mears used $900,000 of these Depakote Case Proceeds to pay down the mortgage on her primary residence:

> 8    Q. And so you asked Post Oak Bank to pay down a
> 9    mortgage by $900,000?
> 10   A. Yes --
> 11   Q. And do you --
> 12   A. -- it looks that way.
> 13   Q. And the $900,000 came from the Depakote case
> 14   proceeds distributed to you on December 28, 2018?
> 15   A. A --
> 16       MR. WILKINS: Object to form.
> 17   A. A distribution to me from the firm?
> 18   Q. (BY MR. BYRD) Of Depakote case proceeds,
> 19   right?
> 20   A. I believe so.

Ex. 5, Mears Dep. Tr. at 90:8-20.

## V. COUNTS

**A. COUNT 1: 11 U.S.C. 523(a)(6): Debts for Willful and Malicious Injury by to Virage or Property of Virage.**

17. Virage fully incorporates the preceding paragraphs as if stated herein.

18. At least a portion of Mears's debt to Virage is exempted from discharge under section 523(a)(6) of the Bankruptcy Code "[f]or willful and malicious injury by the debtor another entity or to the property of another entity."

19. Mears intentionally converted Virage's collateral, including Depakote Case Proceeds that were deposited into her personal bank account. She hid this conversion from Virage until it was uncovered in the arbitration. Mears was aware that Virge held a perfected security interest in those Case Proceeds but nevertheless deprived Virage of its rights in that collateral.

20. Mears also used Virage's collateral to acquire or pay down assets like her primary residence and other assets that she now claims are exempt.

21. To the extent that Mears's debt to Virage is the result of her deliberate conversion of Virage's collateral, as is the case with her conversion of the Depakote Case Proceeds, Mears's debt to Virage is not dischargeable.

22. Mears converted Virage's collateral when she deposited Case Proceeds owed to Virage into her personal bank account, spent them to pay down her primary residence, intentionally misled Virage about their existence despite having a contractual obligation to report them to Virage, and continued to withhold those funds and to mislead Virage about their existence after Virage discovered the withholding in arbitration.

23. In addition to the Depakote Case Proceeds, Virage has identified several million dollars' worth of additional Case Proceeds that are Virage's collateral and should have been paid to Virage but were withheld by Mears and/or Akin.

5

24. These actions harmed Virage and its property.

25. Mears's conversion of Virage's collateral was willful and malicious because Mears deliberately hid the conversion from Virage. Mears was aware of Virage's security interest in and rights to the Case Proceeds, as well as her obligations to report to and pay Virage on those Case Proceeds. But, she did not do so.

26. Mears had no right to withhold Depakote and other Case Proceeds from Virage. She merely did so to misappropriate those funds for her own use despite her contractual obligations and Virage's property rights.

27. The value of the collateral that Mears converted from Virage is at least $1.6 million, and additional discovery will likely show that it is higher. All that debt is not dischargeable under section 523(a)(6) of the Bankruptcy Code.

## VI. CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that the Court determine that Mears's debt is nondischargeable at least in the amount of $1.6 million under section 523(a)(6) and grant such other and further relief that the Court deems just and proper.

Dated: May 19, 2025

Respectfully submitted,

Ahmad, Zavitsanos & Mensing, PLLC

/s/ Cameron Byrd
Cameron Byrd
Texas Bar No. 24097444
Federal I.D. 2790917
cbyrd@azalaw.com
Todd Mensing
Texas Bar No. 24013156
Federal I.D. 302944
tmensing@azalaw.com
Justin Kenney
Texas Bar No. 24126702
Federal I.D. 3738469
jkenney@azalaw.com
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

**ATTORNEYS FOR CREDITOR VIRAGE SPV 1 LLC**

### CERTIFICATE OF SERVICE

The undersigned certifies that on May 19, 2025, Virage's Complaint for a Determination Excepting Debt from Discharge was served via CM/ECF on all parties who have appeared in this action.

/s/ Cameron Byrd
Cameron Byrd